Good morning. Ben Lechman on behalf of Petitioner Appellant Key Tony Ngo. I'd like to reserve, if I may, about two minutes of rebuttal time. And given the Court's indication that we're sticking to a strict calendar, I'll just skip right through the meat of this case. This is a Batson challenge to some peremptory challenges at trial, and both sides agree with the first two out of the three Batson requirements. Both sides, I think, in their briefs, agree that the petitioner made a prima facie showing that there was discrimination. I think five African-American jurors were excluded one by one during the jury selection process. That's the second element. And I think both sides agree that the government was asked for and provided arguably race-neutral reasons for the challenges to those potential jurors. Where we disagree is the impact of the third element, which is whether or not the trial court did what was required of it, which is to make a comparative analysis between the factors that were considered amongst the jurors that did ultimately make the panel and the five African-American jurors that were ultimately excluded. This court in Paulino v. Harrison, which is cited in our opening brief, made it pretty clear that once those first two steps have been satisfied, the burden shifts to the government to prove that these reasons that were proffered were race-neutral and that they somehow applied to the other members of the panel. And in this case, the government ---- The burden for proceeding shifts to the government, but ultimately the burden of making the Batson claim, I think, always rests on the defendant, in this case the petitioner. Isn't that the case? Well, to the extent that it's got to be shown to be non-race-neutral, yes. But the government's proffered rationale, I think they bear at least a substantial burden. If the trial court gets to Stage 3, the prosecutor has to offer up a non-race-based reason. Right. And in that case, in this case it happened. Once the reason's been put on the table, then I understand the burden shifts to your client to make the Batson claim. Yes or no. Yes, that's true, I think, in a technical sense. No, if the reasons proffered are nonsense reasons, as I would submit they are here. Well, that's the burden on you to establish. Why are they nonsense reasons? Well, one of the reasons was factually inaccurate. One of the reasons was that a juror had been dishonorably or other than honorably discharged from the military, when that, in fact, was not the case which was determined after a sidebar conference. One of the more telling reasons offered by the government was that an individual had indicated that, I think he had been asked about whether all the jurors had purchased guns, and when asked why he had purchased one, his answer was that he wanted to. Well, what would be the converse of that? That the other jurors should have been proved that they purchased guns because they didn't want to? That is a tautological reason. It doesn't mean anything to say that this particular juror, the reason why. Counsel, I didn't see that those reasons were among those that were offered by the prosecutor and validated by either the trial court or the district court here. Do you want to address the jurors very specifically and tell us which ones you think that the reasons were not adequate? Yes, and I'm sorry, Your Honor, that juror's number, I'll have to skip back to it. We're only dealing with a limited number of peremptories here, so the list is not terribly long. I understand that. I think this is the second juror, no, this is the, I think the fourth African-American juror that was excluded, and the government's purportedly race-neutral rationale for excluding him was that he had been asked why he had purchased a gun in the past, and his response was that he had wanted to. And the government's answer was, well, that attitude was similar to the attitude of the defendants. But I think just on its face, it's a nonsense answer. It's tautological. Why does anyone in the whole world purchase a firearm? Because they want to. Just because the government says he did something because it was a voluntary act, that's a race-neutral reason? I mean, it's impossible to prove a negative, and at this point, I mean, that's really the burden that's being put to Mr. Noll. Let's focus on that one, and I'll get specific. There's a district judge in the Central District who's been cited publicly for responding to questions by counsel looking for an explanation, and his response is, because I said so, counsel. And that statement, which is literally applicable to every judge, the judge's reasons are expressed in the judge's reasons, has been taken to be reflective of an attitude. In this case, why wouldn't it be fair to say this prospective juror answers because I wanted to, to be reflective of an attitude? I mean, that's the prosecutor's connection. He's trying to say that's an attitude which he thought was shared by defendants. What's implausible about that? Well, I think it's implausible because it doesn't comport with anything else the juror said. It wasn't as if there were demeanor, there were any remarks regarding this particular juror's demeanor, that he was hostile or that this was, and I think the situation Your Honor is referring to is a situation where someone's being sort of petulant, and that's a demeanor type of evidence. The prosecutor in this case never suggested that this juror's demeanor was different. Well, but the trial judge is there. I mean, not the district court judge, but the trial judge is there, sees the expression, and the trial judge is in the best position to view what was happening, concluded it wasn't a problem. Called it a close call is what he said. He wasn't sure, and I think maybe that was what he said around the fourth prospective juror, then when the fifth African-American juror was challenged. I think that that's when the trial judge started to be having, started to have substantial doubt, and I think that is where we get to the Supreme Court's decision in Snyder v. Louisiana where at one point. I'd like to take you back to the juror that you objected to because the purchase of 38 special because he wanted it was the second reason that the prosecution offered, and the first one explained by the district court was that the, that particular juror had been wrongfully accused of a crime, and the prosecutor felt that he would be, because of that, he would be unusually sympathetic to the defense here. And the district court found that that was a race-neutral reason for excusing the juror. So the purchase of the gun was a second reason, but not the principal reason cited by the district court or by the prosecution. Well, there were other African-American jurors, as indicated before. There was the female, I think. Okay, but are you now abandoning your challenge to that juror? No, no, I'm not. You decided to jump to a different juror, so. Well, no, I'm not. I just think that the reason that was originally advanced, I think, was the rationale for buying a gun. When that rationale didn't appear to be carrying the day, I think that the government offered another one, but I think that one doesn't hold any water either. I think that with regard to anyone in this country who's presumed innocent, that that would be something that anyone could potentially believe. You know, as long as we allow, as long as we allow the prosecution and the defense to have some discretion in using the preemptory challenges and not have the court direct all of that for cause, we are going to end up with attorneys flying by the seat of their pants and following some impressions. So there's always going to be some slippage here in the way that we do this, because otherwise we would just have the district court formally excuse everybody for a direct conflict. Right, and there's several dissents that have addressed that as a logistical issue. I think at one point you just get to a numbers perspective where you say, listen, in the other cases, you know, if you have one or two, but where you're here, you're at the fifth African American juror in a row to be excluded. Were there any African Americans seated on the jury? I believe there may have been one in the final tally. But in this, I think it's conceded that the third prong of Bass and the actual neutral evaluation of all the other jurors was never done. Did the defense excuse any African Americans? I believe not. If there was, it might have been one, but definitely not five, definitely not four or three. And I think that the cases that are favorable in this respect are really based on a number. There's a threshold. You get to a point where I think the benefit of the doubt starts to slip away. And I think this is one of those cases, particularly where the rationale becomes thinner and thinner. It's a thinner read as we go along for dismissing these particular jurors. And in this case, it's been, I think, the law since 1992, the clearly established Supreme Court law, that the trial court needed to do that third step in Bass, and it didn't do that third step that this case should be remanded. I know the respondents as well. The district court on the habeas review did that third step. I disagree with that. I don't think that's accurate as a matter of fact. I don't think it can be accurate as a matter of law. I think it's got to be remanded back for an evidentiary hearing in that regard. And with that, I think that, you know, under Kessner and under the Paulino v. Harrison case, which is just completely not addressed at all in the respondent's brief, I think it's pretty clear at this point that when you challenge this many jurors of a protected class, and obviously it doesn't have to be the same class as Mr. Noh who's Vietnamese under Powers v. Ohio, I think it's just a matter of fact where you get to a certain number where we're going to give the defendant a certain benefit of the doubt because we've just gotten too far down the road. It's a common sense inquiry. Your Honor has touched on a theme that's been touched on in several dissents, which is this is a very imperfect science. It's a soft science, even if you could call it a science. But at some point when you get down to about the fifth juror, that seems to where the cases start to break down where it looks like this is a pattern. And I think under Paulino and under Kessner and under Snyder, I think that's what you have here. And with that, I reserve the rest of my time for rebuttal. You're actually well into deficit, but we'll give you one minute for rebuttal. I appreciate the Court's flexibility. And we'll hear from the State. Good morning, Your Honors. Deputy Attorney General David Cook on behalf of Respondent. Addressing the last point, this benefit of the doubt numbers kind of inquiry opposing counsel asserts, I don't believe that there's any clearly established United States Supreme Court precedent regarding application of such a rule. And if any was not applied in this case by the state court, it cannot be a grounds for federal habeas relief under 2254. With regard to pretty much the bulk of opposing counsel's argument, he seems to be attacking the facial rationality of the prosecutor's stated reasons. However, we have conceded that both prongs one and two of the Batson test have been satisfied, and the only focus here today is on prong three. He, opposing counsel, mentions the lack of a comparative juror analysis by the state court. However, Kessler, which stated this court's decision regarding a comparative juror analysis, was handed down and decided well after the trial in this case, the trial in this case from 1998 into 1999. However, the state court's denial of relief of the Batson claim is still not unreasonable, because as the district court found, when looking at a comparative analysis in light of the prosecutor's stated reasons, there was support for a finding that the prosecutor was not engaged in a pretext or stating a pretext for racial discrimination. Mr. Leckman says that the fact that the district court conducted the comparative analysis is not sufficient, but the trial court was the one that was obligated to conduct the comparative analysis. Do you have a response to that? Well, at this point, we're on federal habeas, and it's the ultimate, and the test here is whether the state court denial of relief is objectively unreasonable. And to the extent that the state court did not, apparently applying the law at the time, did not perform and articulate a comparative juror analysis, that may be the case. However, the ultimate denial of relief on the merits was still not objectively unreasonable, as found by the district court. And certainly we submit that the district court correctly found under this comparative analysis that the prosecutor's reasons were not a pretext for racial discrimination. Is it your reading of the law today that trial courts in California, when there's a Wheeler or a Batson objection, must conduct a comparative analysis on the spot? Well, respectfully, Your Honor, as mentioned, and I don't remember the number of the footnote, but we still take the position, Respondent takes the position that a comparative juror analysis is not required as a matter of clearly established federal constitutional law. However, clearly that is the rule here in the Ninth Circuit under Kessler, the en banc decision. We still submit, however, Your Honor, that the ultimate inquiry is the credibility or truthfulness of the prosecutor's non-racial intent in exercising the peremptory challenges. That is borne out by the record as it stands in this case. And in light of the Court's statements about the length of calendar and time, I have nothing further to add than what's in my brief regarding the sufficiency of the evidence argument. I wanted to ask you about that. Yes, Your Honor. Is there any evidence that the defendant knew there was anybody in the back seat? Well, Your Honor, if I may, I don't believe, as I recall from the record, and as I reviewed it the other day, there is no direct evidence of Petitioner having stated, yes, I saw three people in the back seat of the car. And as articulated in our briefs throughout the case, this was a circumstantial evidence case. And as we pointed out in the brief, Petitioner and his six co-defendants saw the victims across a parking lot. They made the collective decision to follow them. And while en route in pursuing them, lighting factors, proximity of the two cars to the victim's car, all support a reasonable inference that the jury could draw that Petitioner knew of the three back seat passengers. Beyond a reasonable doubt? Yes, Your Honor. And here the sufficiency of the evidence test is whether construing all the inferences in favor of the judgment, whether the jury are we have to construe all the inferences from the record in favor of the judgment. And certainly there is sufficient evidence to do that in support of the convictions of attempted murder as to the three back seat passengers. Would it make any difference to his sentence if you lost those three attempted murders from the back seat? That's a good question, Your Honor. And I, unfortunately, I'd have to go back and look to see whether those were concurrent sentences or not. They were consecutive. I actually worked on that. And it appears that if you add all the pieces up, you got 15 years to life for each of the six attempted premeditated murders. If that's correct, if three of the convictions were wound back, that would drop three of those sentences. But the net effect, and this may be as much for the Petitioner's counsel to correct me if I'm wrong, it appeared to me the net effect would be to reduce the term to 77 years to life. So yes, but maybe no. Yes. Is that inconsistent with anything you understand? It's not inconsistent. And I just had a chance to look back at the R&R, which lists the sentences imposed. And certainly Petitioner is serving a life sentence that would still be in place, I believe. So it is somewhat theoretical. But could you just point to a couple of circumstances in which a jury could find that he knew he was shooting at a human being in the back seat? Well, again, Your Honor, the prosecution can rely on circumstantial evidence. Why don't you tell us some? Well, I had mentioned from before that the circumstances as presented by the prosecution in its case, the conversation in the parking lot, the proximity of the Petitioner's car and co-defendant's car to the victim's car at the time of the shooting, the lighting effects, which were discussed in the brief, this is all the jury was entitled to draw an inference that Petitioner knew of these backseat passengers from that evidence. I would also submit, Your Honors, that to focus on the sentencing impact in determining the sufficiency of the evidence issue would not be a proper basis under ______. No, I just wanted to know whether it made any difference to you. Well, my role here, Your Honor, is to uphold the criminal, you know, the just, to perform justice. And our argument is certainly, I feel confident in presenting this argument regarding the sufficiency of the evidence. Certainly, it's up to the court to be the final arbiter. But I believe that in the interest of justice, this argument should be made with regard to this Petitioner and for the heinous crimes that he committed. There is a suggestion in some California law that if you're going after a person, we'll call him X, and X runs into the house and you fire a lot of shots, that you may not only intend to kill X, but you may intend to kill anybody who's around him if you're indiscriminate in the way that you fire. The kill zone. The kill zone. Right. Is the State resting on that theory here? How does that apply here where we have a car? Well, I don't know whether the prosecutor mentioned this expressly, but it would certainly be ______. I guess, Your Honor, as I stand here right now, I don't know. I don't think that the kill zone theory was mentioned expressly. Does the kill zone theory have to be mentioned in order to sustain it in California? I'm sorry to interrupt. I don't believe so, Your Honor, but there is evidence that the firing was as to the car. There's a contained ______. There were five occupants of the car. Let me go back because you seem to have equivocated here just a little bit. Does the kill zone theory have to be separately articulated by the State? Does it have to be separately indicted or separately pled in order to be sustained? That I don't know. These guys went off and were determined to kill all the guys from the opposing gang. They saw at least two. They may have seen the people in the back seat. We don't know. We don't have any direct evidence that they did. But if they'd known that there were three more guys in the back seat, can there be any doubt that these guys would have gone after them as well? I see that I'm over my time. May I briefly answer the question? Yeah. Thank you, Your Honors. I don't believe that there was ______. I believe that the decision was made to shoot at rival gang members, whoever they may happen to be. So to that extent, I don't believe the prosecution, as I stand here right now, I don't believe that the theory was that they were just firing indiscriminately at a crowd and then whoever was in the zone would be a victim of that crime. They followed a specific group of people in a specific vehicle. There may not have been personal knowledge of each individual's name, identity, prior history, but certainly there was an intent as to all of the occupants of that particular vehicle, and I think that's accomplice din. How many shots were fired? I don't recall the exact number, but numerous shots. There were shots fired both by occupants of Petitioner's car driven by one of the co-defendants and the second car occupied by other co-defendants.  Thank you, Your Honors. Mr. Lackman? I don't have a whole lot of time, so I'll just move really briefly. With regard to the reverse order, the substantive issues, with the kill zone theory under Penal Code 187 and 664, there are two California Supreme Court cases that address that, the People v. Lee and People v. Concha, which came out I think maybe two years later, 2006, 2008, I believe, respectively, right about there. And Your Honor is correct that there is a separate pleading element, that it could be an aider and abetter theory or a co-conspirator theory, a natural and foreseeable consequences theory. But in all of those cases, while the Supreme Court has said that it doesn't have to be personal premeditation, that that can be imputed, there does have to be, with regard to each defendant under that case. Can you give me the case names again? Sure. With regard to People v. Lee and People v. Concha, C-O-N-C-H-A, and with Concha there's a California Supreme Court case, I think in 2008, remanded back to one of the fourth districts, couldn't remember which, in I think 2009. In those cases they deal with the kill zone imputed liability theory. What I think Concha clarified after Lee was that even if there was some imputed intent with regard to premeditation deliberation under California, that this sort of kill zone aider and abetter imputed liability theory, each defendant does need to prove to have the specific intent to kill. With regard to Your Honor's question about the evidence, in this case there was a bunch of different types of evidence as indicated, but none of that evidence was helpful with regard to Mr. No. There was no evidence that he shot anyone. There was no evidence that he possessed a gun. None of the victims, and there's two cars. There's a Tercel in the first where the people got away. There's the second incident with regard to the Maxima where the driver was killed, and it's not clear if he was killed from the blunt force trauma of crashing the car or from gunshot wounds. But in either case there was no testimony that Mr. No. was involved in shooting, had a gun, made any of the shots, and there was accomplished testimony in this case by Codefendant Trong Dinh, and he said he didn't even see the CRX, which was what the two cars that the defense in this case were driving. Mr. No. was a passenger of the CRX. He didn't even have the opportunity to observe that car. And with regard to the Tercel shooting, with regard to the Maxima shooting, by the time the CRX got to that scene, it's pretty clear that the driver of that car had already passed away by the time Mr. No. got there. So with regard to evidence of his participation in the murder, there's none. There's none. And the evidence actually sort of supports that. Without much time, I wouldn't spend it on the uncertified issue. Okay. So with regard to the jury selection issue, there's no rule that says that the district court can do the comparative analysis. It's clear. It's clear as day that the state court's got to do it. And what case establishes that? That would be Paulino. Paulino, I think, versus Harrison. And that was in our AOV. I think we're on page 13 or 16. Is that a Ninth Circuit case? It is. Okay. How does that, on AEDPA review, how does that become a clearly established Supreme Court precedent? Under Kessler. Kessler said, Kessler's acknowledged that that rule has been established. I don't read Kessler that way. Well, the Respondent actually conceded that. I'm sorry that Your Honor doesn't read it that way. Yes, I wrote Kessler, but. Okay. What you mean is the way it's been interpreted, even by Respondent, has been that that embodies. I don't think Kessler is wrong. You need a Supreme Court case. What is the Supreme Court case? It would have to be Snyder, I would think. I think you could go back to Bassett. Well, with the comparative analysis. The best case is going to be Miller L., and that's the one where the Supreme Court conducted its own comparative analysis. And that would seem to indicate that a subsequent court can conduct a comparative analysis. In this case, when there wasn't any doubt. I'm not sure there's anything in Miller L. that says that it is now constitutional error for a trial court to fail to conduct a comparative analysis. It seems to validate that courts on appeals that somebody needs to do it. I don't think that was the issue that was cited, if I remember correctly, Miller, that that particular aspect of it was challenged. If your version of the law was correct, the Supreme Court wouldn't have to have done it because they would have simply said the state court didn't do it, that's wrong, reversed. And that's not what the Supreme Court said. That's true. Just because they could have done it that way doesn't mean that's the way they have to do it. Okay. Thank you, Your Honor. We appreciate the helpful arguments from both counsel on this case. The case just argued is submitted. And we'll now move to the next case in the argument calendar, United States v. Farmer.
judges: Noonan, Clifton, Bybee